IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA COLANDER, | ) |
| Plaintiff, | ) |
| v. | ) No. 17 C 2601 |
| | ) Magistrate Judge Sidney I. Schenkier |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Linda Colander has filed a complaint against Metropolitan Life Insurance Company ("MetLife") alleging that when it denied her claim for life insurance proceeds, MetLife committed breach of contract (doc. # 1: Mot. to Remove, Ex. B: Compl.).[2] MetLife has filed a motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 10). The motion is now fully briefed. For the reasons that follow, the Court grants MetLife's motion.

I.

We begin by setting forth the relevant, well-pleaded facts in the complaint, as well as its attached exhibits and the life insurance plans at issue (which, for reasons we explain below, we may consider on this motion to dismiss).

---

[1] On May 19, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 15).

[2] Plaintiff alleges that MetLife's denial of her claim also violated 215 ILCS 5/154.6, a section of the Illinois Insurance Code describing "acts constituting improper claims practice." However, Section 154.6 "is a regulatory provision that comes within the purview of the State Director of Insurance," and "does not provide a policyholder with a private remedy or cause of action for an insurer's improper claims practice." *Zagorski v. Allstate Ins. Co.*, 54 N.E.3d 296, 304 (Ill. App. 2016). Thus, plaintiff cannot state a legal claim for a violation of this section.

While working at Deloitte LLP, plaintiff's husband, Charles Colander, had $316,000.00 in optional group life insurance coverage as part of his employee welfare benefits plan with Deloitte LLP ("Deloitte Plan") (Compl., Ex. 7: MetLife 05/31/2016 Letter at 2). In the event a person's employment with Deloitte ends due to total disability while that person is insured under the Deloitte Plan, that person could be eligible for "extension of basic life insurance," for which no premium payment is required (doc. # 11: MetLife's Mem. in Supp. of Mot. to Dismiss, Ex. A: Deloitte Plan at 52, 56). Alternatively, if a person's employment with Deloitte ends for any reason, that person may be eligible for continuation of insurance with premium payment through a "portability" option which would "port" (or transfer) the person's insurance coverage to a supplemental life insurance plan (*Id.* at 36-37). The Deloitte Plan states that MetLife will not pay insurance under both the Deloitte Plan and a portable plan, and that to receive payment under the Deloitte Plan, any portable plan policy certificate must be "surrendered" to MetLife (*Id.* at 57).

On November 3, 2014, Mr. Colander went on disability leave. He applied for and was approved to continue his life insurance coverage under the Deloitte Plan's total disability waiver of premium provision (MetLife 05/31/2016 Letter at 2). On August 28, 2015, Mr. Colander elected to accelerate his Deloitte Plan, and he received a payment of 80 percent of its value -- $252,800.00 (*Id.*). On September 7, 2015, he was terminated as an active employee at Deloitte due to disability; at that time, he had $63,200.00 in his Deloitte Plan coverage remaining (*Id.*).

On October 30, 2015, MetLife sent an application to Mr. Colander for portable term life insurance coverage in the amount of $324,000.00 (Compl., at ¶ 6; Compl., Ex. 1). Mr. Colander submitted the application, and on December 22, 2015, MetLife sent a letter stating that it processed his portable term life insurance election, giving Mr. Colander optional life coverage in the amount of $324,000.00, effective October 10, 2015 (Compl., Ex. 1). We refer to this life

2

insurance policy as the "Portable Plan" (MetLife's Mem., Ex. B: Portable Plan). Plaintiff was listed as the 100 percent beneficiary for the Portable Plan (*Id.*, Ex. 2).

The Portable Plan states that the Certificate holder, in this case Charles Colander (Compl., Ex. 3), "means a person who was covered under a Former Plan on whose account insurance is in effect . . ." (Portable Plan at 8). The "Former Plan" is defined as "the group plan insured by Us [MetLife] under which You [the certificate holder] were provided the option or privilege of continuing the insurance provided under such plan. Such insurance must have ended as set forth in the provisions of such plan, which specify that continued insurance will be provided under another group policy" (*Id.* at 9). Coverage under the Portable Plan was "dependent on [Mr. Colander's] continuing eligibility, as defined in the group certificate" (Compl., Ex. 2). In other words, Mr. Colander was only eligible for life insurance coverage under the Portable Plan if the coverage provided under his Former Plan -- the Deloitte Plan -- ended (Portable Plan at 9). Furthermore, the Portable Plan states that if the participant -- Mr. Colander -- became entitled to a death benefit under his Former Plan, his coverage under the Portable Plan would end (*Id.* at 22).

In the beginning of January 2016, Mr. Colander sent a check to MetLife for $1,533.79, the premium due on the Portable Plan (Compl., at ¶ 15). He died later in January 2016 (Compl., at ¶¶ 16, 19).[3] On January 25, 2016, plaintiff informed MetLife of her husband's death, and on January 28, 2016, MetLife sent a letter requesting certain documents regarding plaintiff's "expected claim amount" for $324,000.00 (*Id.*, at ¶¶ 17-18 and Ex. 6). On February 3, 2016, plaintiff completed and returned the requested documents (Compl., at ¶ 19). On February 29,

---

[3]The complaint asserts in one paragraph that Mr. Colander died on January 15, 2016, and in another paragraph that his death certificate stated he died on January 21, 2016 (*see* Compl., at ¶¶ 16, 19). The parties do not address this discrepancy, and it does not affect the Court's decision in this case.

3

2016, payment was made under the Deloitte Plan in the amount of $63,200.00 (MetLife 05/31/2016 Letter at 2), the balance of the amount of coverage remaining under the Deloitte Plan after the accelerated payment in September 2015. On March 15, 2016, MetLife denied plaintiff's claim for $324,000.00 under the Portable Plan (Compl., at ¶ 20). She appealed that decision (*Id.*, at ¶ 22), and MetLife upheld the denial (MetLife 05/31/2016 Letter at 2).[4]

## II.

In ruling on a Rule 12(b)(6) motion to dismiss, we construe plaintiff's complaint in the light most favorable to her, accept as true all well-pleaded factual allegations, and draw all reasonable inferences in favor of plaintiff. *White v. Keely*, 814 F.3d 883, 887-88 (7th Cir. 2016). While the Court is generally limited to considering the allegations in the complaint on a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Here, plaintiff attached seven exhibits to her complaint in support of her claim that MetLife breached its obligations under the Portable Plan: (1) five pages of correspondence from MetLife to plaintiff or her husband dated between December 2015 and July 2016, (2) a "certificate specifications page" from the Portable Plan, and (3) a monthly statement from the Portable Plan. In its motion to dismiss papers, MetLife attached a more complete copy of the Portable Plan as well as a copy of the Deloitte Plan (MetLife's Mem., Exs. A and B).

Plaintiff argues that this Court should not consider the documents attached to her complaint or MetLife's memorandum, or that the Court should only consider the portions of the

---

[4]Plaintiff does not allege what happened to the $1,533.79 premium on the Portable Plan after her claim for benefits was denied. MetLife claims it refunded the premiums once plaintiff received full death benefits under the Deloitte Plan (doc. # 25: MetLife's Reply at 9); plaintiff does not assert otherwise.

documents to which plaintiff cites in support of her claim (doc. # 21: Pl.'s Resp. to MetLife's Mot. to Dismiss at 2). We disagree. A court "is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (internal quotations and citations omitted). "[D]istrict courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim . . . includ[ing] exhibits attached to the complaint or documents referenced in the pleading if they are central to the claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (internal quotations and citations omitted).

With respect to the seven exhibits plaintiff attached to her complaint, she "has not only cited [these documents] in the body of her complaint, but she has, to some degree, relied on their contents as support for her claims," and there is no "indication from her—be it in the complaint or the briefing—that the documents are not genuine or that they have been falsified in some way." *Williamson*, 714 F.3d at 436. We thus consider the documents attached to plaintiff's complaint in ruling on MetLife's motion to dismiss.

We next consider the documents attached to MetLife's motion to dismiss. "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Burke*, 714 F.3d at 505 (internal quotations and citations omitted). Although plaintiff did not attach the Portable Plan to her complaint, it is obviously central to her claim that MetLife breached the terms of that plan. Indeed, plaintiff's complaint depends on the validity and authenticity of the Portable Plan for her claim. Plaintiff suggests that the Court should not consider the Portable Plan document because she claims that she never received a full copy of it (Pl.'s Resp. at 3; Compl., at ¶ 26). However, whether or not

she received a full copy of the Portable Plan, her claim against MetLife is dependent on it, and the Court is thus entitled to consider it.

The Deloitte Plan is no less central to plaintiff's claim, which depends on the interplay between the Deloitte and Portable Plans. We recognize that the body of the complaint does not cite the Deloitte Plan, but note that Exhibit 7 to the complaint cites the Deloitte Plan as the basis for MetLife's decision to deny coverage under the Portable Plan.

The purpose of allowing courts to consider certain documents attached to a motion to dismiss "is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). *See also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (the "incorporation-by-reference doctrine" "prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit'")). This rule is "aimed at cases interpreting, for example, a contract," where the documents, though not attached to or mentioned in the complaint, are necessary for the district court "to understand the nature of the dispute between the parties," *188 LLC*, 300 F.3d at 735, or to "throw[] light on the relationship" between the parties. *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009).

These reasons for considering documents attached to a motion to dismiss are applicable here, where the plaintiff appears to be "assiduously avoid[ing] mentioning the existence of underlying contract documents between the parties." *Long v. Fed. Home Loan Mortg. Corp.*, No. 16 C 03072, 2017 WL 1178531, at *5-6 (N.D. Ill. Mar. 30, 2017). Thus, we consider both of the documents attached to MetLife's motion to dismiss as well as the exhibits attached to plaintiff's complaint. *See also Squires-Cannon v. White*, 864 F.3d 515, 517 (7th Cir. 2017) (affirming the

district court's decision to grant the defendants' motion to dismiss based on documents attached to the motion, where the plaintiff did not dispute the veracity of those documents); *Minch v. City of Chicago*, 486 F.3d 294, 300 (7th Cir. 2007) (holding that although the complaint did not refer to the parties' collective bargaining agreement, the district court was entitled to consider it because its authenticity was not disputed and the plaintiffs' claim rested on its terms).

### III.

Plaintiff contends that when MetLife approved coverage under the Portable Plan, "[a] contract between MetLife was formed and MetLife breached that contract" when it refused to pay benefits under the Portable Plan (Pl.'s Resp. at 1-2). MetLife has moved to dismiss plaintiff's complaint, arguing that plaintiff fails to state a claim for breach of contract and that, in any event, her state law claims are completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") (MetLife Mot. to Dismiss at 1-2).

### A.

We first address MetLife's contention that plaintiff's state law claims are completely preempted by ERISA. MetLife argues that preemption applies because plaintiff's claims cannot be determined without interpreting the terms of the Deloitte Plan, which govern the right to obtain coverage under the Portable Plan (MetLife's Mot. at 2). Plaintiff does not dispute this contention. Rather, plaintiff argues that she should have the opportunity to re-plead her state law claims as ERISA claims (Pl.'s Resp. at 4-5).

Section 514(a) of ERISA states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144. "A law relates to an employee benefit plan if it has a connection with or reference to such a plan." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisconsin, Inc.*, 657 F.3d 496, 504 (7th

7

Cir. 2011) (internal citations and quotations omitted). "ERISA thus preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan." *Id.*

We need not decide the preemption issue because it is ultimately irrelevant to the outcome of this case. Whether the Court proceeds as if this is a state-law insurance coverage dispute governed by state common law or an ERISA plan dispute governed by the federal common-law rules of contract interpretation, "[t]he result is the same under either body of law." *See Steele v. Life Ins. Co. of N. Am.*, 507 F.3d 593, 595-96 and n.1 (7th Cir. 2007) (declining to decide issue of ERISA preemption because plaintiff's claim for breach of contract failed on the merits); *see also Sembos v. Philips Components*, 376 F.3d 696, 703-04 (7th Cir. 2004) (declining to "delve into the intricacies of ERISA preemption" in that case because the plaintiff's state law claims failed on the merits).[5] We thus proceed to the merits of MetLife's motion to dismiss.

**B.**

"A complaint will survive a motion to dismiss for failure to state a claim if it 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Alamo v. Bliss*, 864 F.3d 541 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

---

[5] Even if plaintiff's state law claims were completely preempted by ERISA, plaintiff would be "entitled to go forward and litigate [her] claim under ERISA without amending the complaint to state a claim under ERISA" because "[p]arties do not need to plead legal theories in their complaints in federal court." *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 425 (7th Cir. 2005). "The real question was whether relief was possible based on any legal theory—ERISA included—under any set of facts that could be established consistent with the allegations." *Id.* at 428.

In our judgment, the terms of the Deloitte and Portable Plans make clear that plaintiff's claim is not plausible. The Portable Plan states that eligibility is limited to individuals whose coverage terminated under their former plan (Portable Plan at 9, 22). However, Mr. Colander continued to have coverage under his Deloitte Plan because he applied for, and was granted, a continuation of that coverage under a disability waiver of premium. In addition, the application for life insurance under the Portable Plan was for $324,000.00 in insurance coverage; however, Mr. Colander did not have that amount of coverage in his Deloitte Plan because he had already been paid $252,800.00, leaving only $63,200.00 remaining in his Deloitte Plan.

Plaintiff nonetheless argues that MetLife must pay her the $324,000.00 policy amount under the Portable Plan for several reasons. We do not find any of them to be persuasive.

*First*, plaintiff points out that the Deloitte Plan states that to receive payment under that plan, any other policy certificate must be "surrendered" (Pl.'s Resp. at 2; Deloitte Plan at 54, 57). Plaintiff contends that she "never surrendered the $324,000 certificate," and thus, that MetLife must pay her that amount (Pl.'s Resp. at 2). This argument is a non-starter. For plaintiff to be entitled to the coverage amount under the Portable Plan, plaintiff's husband must have been covered under the Portable Plan in the first place. He was not.

To state a claim for breach of contract under Illinois law, a plaintiff must adequately allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). Whether a contract was formed is a question of law. *Bauer v. Qwest Commc'ns Co., LLC*, 743 F.3d 221, 227 (7th Cir. 2014). A valid and enforceable contract "requires a meeting of the minds or mutual assent as to all material

terms." *Id.* Whether the parties had a meetings of the minds is determined by their "objective manifestation of intent" to form a contract. *Id.*[6]

Here, the terms of the Deloitte and Portable Plans foreclose the life insurance agreement that plaintiff seeks to enforce. The policies state that MetLife will not pay insurance under both plans, and MetLife paid the full amount of coverage under the Deloitte Plan.[7] MetLife plainly made a mistake in offering the Portable Plan to Mr. Colander and in subsequently accepting his application for the Portable Plan. MetLife's letter denying coverage under the Portable Plan and subsequent actions show that it never intended to pay out under both plans. Thus, "there could not have been a meeting of the minds between the alleged parties to the contract, . . . [and] no underlying contract was formed." *United States v. Johns*, 686 F.3d 438, 448-49 (7th Cir. 2012). *See also Harley v. Magnolia Petroleum Co.*, 37 N.E.2d 760, 765 (Ill. 1941) (mistakes that have to do with "such matters as the existence and identity of the subject matter, errors as to price, quantity, and the like . . . relat[e] to an essential element of the contract which prevent a meeting of the minds of the parties and so no agreement is made"). MetLife clearly did not intend to contract for coverage that the plans prohibited. Thus, Mr. Colander and MetLife never had a meeting of the minds sufficient to create a valid and enforceable agreement for coverage under the Portable Plan. Plaintiff's refusal to surrender the certificate does not change that conclusion.

*Second*, plaintiff argues that MetLife must pay her $324,000.00 because MetLife made a "unilateral mistake of fact" when it erroneously offered her husband coverage under the Portable

---

[6] Neither side discusses what law should apply to plaintiff's state law contract claim. However, plaintiff alleged that she is a citizen of Illinois (Compl., at ¶ 2); cited Illinois state law cases in support of her contract claim (Pl.'s Resp. at 4); and also asserted a state law claim under the Illinois Insurance Code (*see* page 1 n.1, *supra*). We therefore apply Illinois law here, while noting that the governing principles are not materially different under federal common law. *See Steele*, 507 F.3d at 596 n.1.

[7] Plaintiff notes that the Portable Plan and the Deloitte Plan identify different policyholders, including Deloitte, Chase Manhattan Bank and the Trustee of MetLife Group Life and Health Insurance Program (Pl.'s Resp. at 3). This observation does not change the fact -- dispositive here -- that both policies were purported to insure plaintiff's husband's death.

Plan (Pl.'s Resp. at 3-4). Plaintiff asserts that such a unilateral mistake "cannot void the agreement" (*Id.* at 4). As the Court has just explained, however, there is no agreement to "void" here because Mr. Colander and MetLife never established an enforceable agreement for coverage under the Portable Plan in the first place.

*Third*, plaintiff contends that MetLife unilaterally "changed" the terms of the Deloitte Plan when it offered Mr. Colander life insurance coverage under the Portable Plan (Pl.'s Resp. at 4). This argument also fails. A modification of an existing contract, like a newly formed contract, requires a meeting of the minds to be valid and enforceable. *Chicago College of Osteopathic Medicine v. George A. Fuller Co., Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1145 (Ill. 1999). Plaintiff's complaint does not plausibly allege that any such meeting of the minds occurred with respect to the Portable Plan. Therefore, her claim for breach cannot stand.

*Fourth*, plaintiff argues that she and her husband "relied on MetLife's offer, entered into this life insurance contract and paid the appropriate premium" (Pl.'s Resp. at 4). Plaintiff did not assert an equitable estoppel claim in her complaint, but this brief statement in plaintiff's response seems to argue that plaintiff should recover based on a non-contract theory of detrimental reliance. "Courts applying Illinois law will generally entertain arguments grounded in equitable estoppel in situations where a person by his or her statements and conduct leads a party to do something that the party would not have done, thereby placing the other party in a worse position." *Prestwick Capital Mgmt., Ltd. v. Peregrine Fin. Grp., Inc.*, 727 F.3d 646, 662-63 (7th Cir. 2013) (internal citations and quotations omitted). To sustain such a claim, a party's reliance must be "reasonable." *Id.*

While it is plausible that Mr. Colander reasonably relied on MetLife's offer for coverage under the Portable Plan -- despite his already having received payment of $252,800.00 from

11

MetLife under the Deloitte Plan -- plaintiff does not suggest that this reliance put her in a worse position than before Mr. Colander applied for the Portable Plan coverage. Plaintiff notes that Mr. Colander "paid the appropriate premium," but she does not dispute MetLife's representation that it returned that premium to her and that MetLife paid the full amount of life insurance coverage under the Deloitte Plan. As such, plaintiff does not contend that she relied on any of MetLife's representations to her detriment. *See Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 811 (7th Cir. 2009) (affirming district court's decision to dismiss with prejudice the plaintiff's fraud claim where "he had failed to allege facts that suggested that he had relied to his detriment on the allegedly fraudulent statements made by the defendants").

Finally, we note that our conclusion is consistent with the analysis in *Metro. Life Ins. Co. v. Sun*, No. 12 C 6036, 2013 WL 4759586 (N.D. Ill. Sept. 4, 2013). In *Sun*, the decedent had participated in his employer's life insurance plan. *Id.* at *1. After he became totally disabled, he was terminated from his job and accepted the chance to port his life insurance to a second policy. *Id.* at *2. The plans at issue in *Sun* stated, in virtually identical language to the instant case, that they were specifically designed to prohibit concurrent coverage. *Id.* at *3. However, the decedent's first policy did not terminate as expected; MetLife approved a waiver of premiums that continued that coverage. *Id.* at *2. MetLife denied coverage under the second policy, and the beneficiary of that policy sued for breach of contract. The court held that the beneficiary could not state a claim for breach of the second policy because the first policy remained in effect; the court explained that to allow recovery under both plans would allow the beneficiary to seek impermissible "double benefits." *Id.* at *4-5.

Plaintiff seeks the same impermissible double recovery here. She has received her full benefits under the Deloitte Plan, and she cannot now recover an additional $324,000.00 under the Portable Plan.

## CONCLUSION

It is unfortunate that MetLife's error in soliciting Mr. Colander to obtain coverage in the Portable Plan has engendered this litigation. But MetLife's mistake is not a basis for allowing to proceed a case that seeks what the Plans prohibit. For the foregoing reasons, we grant MetLife's 12(b)(6) motion to dismiss with prejudice (doc. # 10). This case is terminated.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: August 31, 2017**